UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF PAINTING INDUSTRY ) <br> INSURANCE FUND, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PHARAOH GLASS SYSTEMS, INC. ) <br> ) <br> Defendant. ) | CASE NO. 1:07CV1747 <br><br> MAGISTRATE JUDGE <br> GEORGE J. LIMBERT <br><br><br> MEMORANDUM OPINION AND ORDER |

The above case came before the Court on a motion for partial summary judgment filed by Plaintiff Trustees of Painting Industry Insurance Fund ("Plaintiff"). ECF Dkt. #19. For the following reasons, the undersigned GRANTS Plaintiff's motion for partial summary judgment. *Id.*

## I.     PROCEDURAL HISTORY

On June 13, 2007, Plaintiff filed a complaint against Defendant in this Court pursuant to Section 301 of the Labor Management Relations Act of 1947 as amended ("LMRA"), 29 U.S.C. § 185, and Sections 502(a)(3), (e) and (f) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(3)(e) and (f). ECF Dkt. #1. Plaintiff alleged that it is the depository for payments made to its particular Plan and/or Fund under the Outside Agreement between the Construction Employers Association and Glazing Contractors Association of Northeast Ohio and the International Brotherhood of Painters and Allied Trades ALF-CIO, District Council No. 6 of Cleveland, Ohio and Glaziers Local Union No. 181 of Cleveland, Ohio ("CBA"). *Id.* at 2. Plaintiff is authorized and obligated to collect contributions and deductions owing for the health and welfare benefits in accordance with the CBA. *Id.*

1

Plaintiff further alleged that Defendant is an employer as defined by 29 U.S.C. § 152(2) and is and has been an employer of employees represented by the International Brotherhood of Painters and Allied Trades ALF-CIO District Council No. 6 of Cleveland ("IBPAT6").  ECF Dkt. #1 at 2. Plaintiff contends that the CBA between Defendant and IBPAT6 was executed on or about May 1, 2002 when Roberto Repko, President of Defendant, signed the CBA thereby agreeing that Defendant was bound by the terms and conditions in the CBA. *Id*.  By executing the CBA, Plaintiff avers that Defendant agreed to submit information to the Insurance Fund ("Fund") regarding those employees subject to the Fund and further agreed to make payments to the Fund as provided by the conditions of the Agreement. *Id*. at 2-3.  Plaintiff avers that Defendant was to submit payroll information and make payments to the Fund on a monthly basis pursuant to the CBA and if Defendant did not do so, it was considered delinquent, and the Fund could assess liquidated damages of ten percent of the amount due with interest on the unpaid contributions of one and one-half percent of the total due per calendar month thereafter. *Id*. at 3.

Plaintiff averred that Defendant submitted to an audit on May 3, 2007 but failed to make records available from January 1, 2004 to the present in order to complete the examination of payroll and other records of Defendant.  ECF Dkt. #1 at 3.  Plaintiff anticipated that Defendant would refuse to submit further reports and payments. *Id*.

In its prayer for relief, Plaintiff requested that the Court order Defendant to permit Plaintiff's representatives to audit Defendant's books and records for the period of January 1, 2004 through the present.  ECF Dkt. #1 at 4.  Plaintiff further demanded judgment against Defendant for any additional sums for which Defendant may become obligated to pay through the audit, along with liquidated damages, interest, costs and reasonable attorney fees. *Id.*

Defendant answered the complaint on July 16, 2007 and admitted that the parties had entered into the CBA that Plaintiff had attached to its amended complaint.  ECF Dkt. #8 at 2.  Among its defenses, Defendant asserted Plaintiff's failure to exhaust administrative remedies, the issue lacked

2

ripeness, and the doctrine of laches applied due to Plaintiff's waiver of its right to proceed under Article XXII of the CBA. *Id.* at 4.

On July 16, 2007, Defendant filed a motion to dismiss Plaintiff's complaint based upon a lack of jurisdiction. ECF Dkt. #9. After the parties consented to the jurisdiction of the undersigned, this Court denied the motion to dismiss on August 15, 2007, finding that Plaintiff was not subject to the Arbitration Clause in the CBA because it is a trustee of the Plan. ECF Dkt. #s 12, 15.

On September 14, 2007, Plaintiff filed the instant motion for partial summary judgment. ECF Dkt. #19. On October 12, 2007, Defendant filed a brief in opposition to the motion for partial summary judgment. ECF Dkt. #21. On October 26, 2007, Plaintiff filed a reply. ECF Dkt. #23.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(C). Summary judgment is proper when no genuine issues of fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Rule 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Allen v. Wood*, 970 F.Supp. 824, 828 (E.D.Wash.1997)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and must identify the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp., v. Catrett*, 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). This initial burden can be discharged by the moving party

3

by showing that the nonmoving party has failed to establish an essential element of the nonmoving party's case for which it bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 323; *Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995). The evidence submitted must be viewed in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

If the moving party meets this burden, then the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. FED. R. CIV. P. 56(e). The nonmoving party must present additional evidence beyond the pleadings. *Id.* The nonmoving party must do this by presenting more than a scintilla of evidence in support of its position. *Anderson,* 477 U.S. at 252. Summary judgment must be granted unless sufficient evidence exists that favors the nonmoving party such that a judge or jury could reasonably return a verdict for that party. *Id.* at 249. The Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* If a party fails to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the Court is required to enter summary judgment. *Celotex*, 477 U.S. at 322.

### III. **LAW AND ANALYSIS**

#### A. **DEFENDANT IS CONTRACTUALLY BOUND BY THE CBA**

Plaintiff first asserts that no genuine issues of material fact exist and it is entitled to judgment as a matter of law because Defendant continues to be contractually bound by the CBA because it failed to comply with the written termination provisions in the CBA. ECF Dkt. #19 at 5-6.

Defendant asserts that the CBA expired after a four-year term on May 1, 2006. ECF Dkt. #21 at 3. It contends that application of the "evergreen clause" upon which Plaintiff relies is barred by the doctrine of laches. *Id*. Defendant applies the elements of laches in order to establish that Plaintiff should be barred from bringing the instant action. *Id*. at 3-6.

4

Plaintiff meets its burden on summary judgment by pointing to the provisions of the CBA that it argues establish that Defendant continues to be bound by the CBA. Plaintiff cites Article XXIX of the CBA at Section 1.(b) and Article XI, Paragraph 7 in support. ECF Dkt. #19 at 5-6.

The Court notes that the CBA indicates dates of 2002-2006. ECF Dkt. #1, Exhibit A at 1, 3, 41. Paragraph 5 of Article 1 of the CBA further states that

> The provisions of this Agreement shall continue in full force and effect until April 30, 2006, thereafter from year to year, subject, however, to the right of the Union and the company to give written notice by certified mail to the other party at least sixty (60) days prior to April 30, 2006.

ECF Dkt. #1, Exhibit 1 at 2. The relevant section cited by Plaintiff in Article XXIX of the CBA provides:

> Section 1. This Agreement shall become effective as of May 1, 2002 and will continue in full force and effect until April 30, 2006, with the following provisions and exceptions:
>
> (b) This Agreement will continue in full force from year to year after May 1, 2002, unless either party desires to modify or terminate the Agreement and notifies the other party in writing of its desire to do so at least sixty (60) days prior to May 1, 2006 or May 1 of any subsequent year.

ECF Dkt. #1, citing ECF Dkt. #1, Exhibit 1 at 41.

Since Plaintiff meets its initial burden on summary judgment of pointing the Court to the provisions of the CBA which it believes shows that it is entitled to summary judgment on this issue, the burden shifts to Defendant to avoid the entry of summary judgment by presenting additional evidence beyond the pleadings in support of its position that the CBA ended in 2006 and the doctrine of laches bars Plaintiff's lawsuit. Fed. R. Civ. P. 56. Defendant has not met its reciprocal burden.

Defendant applies the elements of the laches doctrine and concludes that laches bars the "evergreen clause" in the CBA. ECF Dkt. #21. Neither party disputes that Section 1(b) of Article XXIX of the CBA is an "evergreen clause".

Both the United States Supreme Court and the Sixth Circuit Court of Appeals have found that evergreen clauses in CBAs are legally valid and enforceable. *Eastern Enterprises v. Apfel,* 524 U.S.

5

498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998); *Trustees of the B.A.C. Local 32 Ins. Fund. v. Fantin Enterprises, Inc*., 163 F.3d 965, 968-69 (6th Cir.1998). When an evergreen clause renews a contract, all of the contract terms and obligations continue for the period of renewal. *Fantin,* 263 F.3d at 968, citing *Michigan Laborers' Health Care Fund v. Taddie Const., Inc*., 119 F.Supp.2d 698, 701 (E.D.Mich. 2000), citing *Fantin*, 163 F.3d at 969.

The instant evergreen clause is similar to that in *Fantin*. The Sixth Circuit in *Fantin* held that a CBA is limited to the language in its four corners unless it is ambiguous. 163 F.3d at 969. Applying this holding, the *Fantin* Court noted the clear language of the 1991 evergreen clause language which stated that the CBA would "remain in full force and effect through May 27, 1992 and from year to year thereafter unless written notice of intent to terminate or modify the Agreement be submitted, at least sixty (60) days prior to the expiration date by either party to the other." *Id*. The Court held that "[t]he termination clause in the 1991 agreement provides clear, unambiguous terms upon which the contract may be canceled: through written notice by either party of their intent to terminate it." *Id.* The Sixth Circuit noted that "[w]hen such clear and specific language in a labor agreement is at issue, federal courts are uniform in their strict interpretation of such language." *Id*., quoting *Irwin v. Carpenters Health and Welfare Trust Fund for California*, 745 F.2d 553, 556 (9th Cir. 1984).

Here, the termination provision of the evergreen clause is as clear as that in *Fantin*. Thus, the only way to terminate the CBA was for Defendant to provide written notice to Plaintiff of its desire to terminate the CBA at least sixty days prior to May 1, 2006 or May 1 of any subsequent year. While Defendant asserts that it paid all benefits due in 2004, stopped submitting monthly reports, and informed Plaintiff's agent of its intent to stop using Glaziers, Defendant did not provide written notice to terminate the CBA as required by the unambiguous language of Section 1(b) of Article XXIX of the CBA. Defendant was and is still therefore bound by the CBA terms.

Defendant argues that laches bars Plaintiff's lawsuit because Plaintiff's delayed in bringing the lawsuit after the four-year term of the CBA expired and after it received actual and constructive notice of Defendant's wish to end the CBA, which prejudiced Defendant because it forced Defendant into a continuing contractual relationship with Plaintiff that it does not desire. ECF Dkt. #21 at 4-7. The Court rejects Defendant's laches argument.

The Sixth Circuit describes laches as "a negligent and unintentional failure to protect one's rights." *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.,* 936 F.2d 889, 894 (6th Cir.1991). In order to assert laches, Plaintiff must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.,* 270 F.3d 298, 320 (6th Cir.2001). In elaborating on the doctrine of laches, the Sixth Circuit quoted from 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2946 at 117 (2d ed.1995) (quoting de Funiak, *Handbook of Modern Equity* § 24 at 41 (2d ed.1956)).

> [L]aches does not result from a mere lapse of time but from the fact that, during the lapse of time, changed circumstances inequitably work to the disadvantage or prejudice of another if the claim is now to be enforced. By his negligent delay, the plaintiff may have misled the defendant or others into acting on the assumption that the plaintiff has abandoned his claim, or that he acquiesces in the situation, or changed circumstances may make it more difficult to defend against the claim.

*Chirco v. Crosswinds Communities, Inc*., 474 F.3d 227, 231 (6th Cir. 2007).

Defendant cites the length of the delay in filing the lawsuit in order to show Plaintiff's lack of diligence. ECF Dkt. #21 at 4-5. Defendant asserts that Plaintiff filed this lawsuit well after it gave actual notice to Plaintiff of its desire to stop using Glaziers in 2004 when its president had a conversation with Plaintiff's agent. *Id*. Defendant contends that it also gave constructive notice to Plaintiff of its desire to end the relationship by its failure to submit monthly reports to Plaintiff since 2004. *Id*.

7

None of these facts support a finding that Plaintiff's delay in bringing its lawsuit misled Defendant into acting on the assumption that Plaintiff abandoned its claim, especially when Plaintiff was bound by the CBA to collect contributions and Defendant could terminate the CBA only through written notice. Further, these facts do not establish that Plaintiff acquiesced in the situation and they do not show that Defendant faced changed circumstances that made it more difficult for it to defend against the claim. Accordingly, Defendant cannot meet the first element of establishing the application of the doctrine of laches.

Even if Defendant could show a lack of diligence on Plaintiff's part, it nevertheless fails to establish prejudice resulting therefrom. Defendant asserts that it will be prejudiced if laches does not apply because it will be forced into a continuing contractual relationship with Plaintiff that it does not desire. ECF Dkt. #21 at 5. Defendant explains that the evergreen clause came as a complete surprise, since in 2004, Defendant's President clearly informed Plaintiff's agent that Defendant did not want to renew the CBA due to problems with the Glazier workers. *Id.* at 6. Defendant also points out that "it is inherently unfair to compel the Defendant into affirmative duties owed to the Plaintiff simply because of an omission buried in the boilerplate language of the CBA." *Id.*

The fact that Defendant is bound by an obligation it finds undesirable does not amount to the type of prejudice required to assert the defense of laches. Further, the evergreen clause was a part of a contract that Defendant's president signed, and even if it was "boilerplate", it was nevertheless part of a negotiated contract between fairly sophisticated parties. Defendant has failed to show that it would be prejudiced in defending the claim or that any other unjust result would occur as a result of the delay.

Since Defendant has failed to meet its reciprocal burden on summary judgment of establishing that it is not bound by the CBA and the evergreen clause in particular, the Court GRANTS Plaintiff's motion for partial summary judgment and finds that Defendant was and is bound by the CBA and in

8

particular its evergreen clause.

### B. PLAINTIFF MAY ENFORCE THE TERMS OF THE CBA

Plaintiff also moves for summary judgment on the issue that it, as Trustee, may enforce the terms of the CBA as a Third-Party Beneficiary. ECF Dkt. #19 at 6. Defendant provides no factual or legal argument to the contrary and 29 U.S.C.§ 1132(d)(1) and caselaw establish that Plaintiff can indeed enforce the CBA as a third-party beneficiary trustee. *See* 29 U.S.C. § 1132(d)(1)(An employee benefit plan may sue or be sued under this subchapter as an entity."); *Anderson v. AT & T Corp.,* 147 F.3d 467, 473 (6th Cir.1998) ["We have long recognized that the plaintiff can recover for the employer's breach of a collective bargaining agreement if the plaintiff is a third-party beneficiary of the agreement"]; *Board of Trustees of Ohio Laborers' Fringe Benefit Programs v. Bihn Excavating, Inc*., No. Civ. A. 2:03-CV-875, 2005 WL 1421953 at *3 (S.D.Ohio 2005 )("Because plaintiffs are third-party beneficiaries of the collective bargaining agreement, they are entitled to enforce it.').

Moreover, the CBA itself provides that Plaintiff may enforce its terms as Third-Party Beneficiaries. Article XI, Paragraph 13 of the CBA provides that

> [t]he respective Trustees of the Funds and their successors in office, shall be deemed to be the joint and several beneficiaries of this Agreement, for the purpose of enforcing the provisions of this section of the Agreement and shall, in addition to and with or without the Union have standing to sue on this Agreement to enforce the terms hereof and the respective Agreements and Declarations of Trust and/or other governing instruments of the Funds and the payments by any Employer of all sums and contributions due to the Funds.

That section further provides that:

> The Trustees shall further have all such other relief (including temporary and permanent injunctive relief) and remedies against a delinquent Employer to which they may be entitled at law or in equity. The Trustees may compel and enforce the payment of contributions in any manner which they deem proper and the Trustees may make such additional rules and regulations to facilitate and enforce the collection and payment hereof as they may deem appropriate.

*Id*. Defendant signed the CBA and agreed to be bound by its terms.

9

Consequently, the Court GRANTS Plaintiff's motion for summary judgment and finds that Plaintiff may enforce the provisions of the CBA to pursue an ERISA Collection Action. ECF Dkt. #19 at 6.

### C. **PLAINTIFF IS ENTITLED TO AUDIT DEFENDANT'S RECORDS**

Plaintiff further moves for summary judgment in its favor on the issue that it is entitled to audit Defendant's books and records in order to ascertain whether Defendant has underpaid, paid, or overpaid contributions on behalf of individuals covered under the CBA. ECF Dkt. #19 at 7. Plaintiff cites to Article XI, Paragraph 12 of the CBA, as well as Section 6 of the Amended and Restated Agreement and Declaration of Trust of the Painting Industry Insurance Fund ("ARADTPIIF") in support. *Id.* Plaintiff explains that Defendant failed and refused to cooperate with Plaintiff in order to allow an audit to occur. *Id.*

Again, Plaintiff has met its initial burden on summary judgment. Article XI, Paragraph 12 of the CBA provides that:

> Each Employer agrees to permit an audit or examination of such books, records, papers of [sic] reports of the Employer as may be necessary in the discretion of the auditor, to determine whether the Employer is making full and prompt payment of all sums required to be paid to the Funds. The representative of the Funds shall perform the audit or examination. If, as a result of said audit or examination, substantial deficiency, as determined by the Board of Trustees, or more in payments to the Fund is discovered, the funds may assess their costs in performing the audit or examination to the Employer, and said cost shall be collectible as any other amount due from the Employer to the Funds.

Moreover, Section 6 of the ARADTPIIF provides:

> The Trustees or any authorized agent or representative of the Trustees shall have the right at all reasonable times during the business hours to enter upon the premises of any Employer obligated to contribute to the Trust Fund and to examine and copy such of the books, records, papers and reports of said Employer as may be necessary to determine whether said Employer is making full payment to the Trustees of the amount required by the Collective Bargaining Agreement with said Employer.

ECF Dkt. #19, Exhibit B at 14.

Since the Court has previously found that Defendant is contractually bound by the CBA and its terms, and the Court has rejected Defendant's only argument of laches, the Court GRANTS Plaintiff's motion for summary judgment on this issue as well and ORDERS that Plaintiff is entitled to audit the books and records of Defendant as provided in the above provisions of the CBA. ECF Dkt. #19 at 7.

The Court notes that Shawn Kroger, the Funds Administrator, attests in his affidavit which -Plaintiff attached to its motion for partial summary judgment that Defendant permitted Plaintiff to conduct a partial audit on May 3, 2007, but did not provide sufficient information in order to complete the audit. ECF Dkt. #19, Exhibit 2. Mr. Kroger also attests that Defendant has refused to provide the information relevant to complete the audit from June 1, 2004 to the present time. *Id*. at 2. However, Plaintiff requests in its motion for partial summary judgment that the Court order Defendant to make all books and records available for the period of January 4, 2004 to the present. ECF Dkt. #19 at 9. Nevertheless, Plaintiff states in the procedural history portion of its motion that Defendant failed and refused to make records available from June 1, 2004 to the present.

Based upon Mr. Kroger's affidavit and the Statement of the Case provided by Plaintiff, the Court GRANTS Plaintiff's motion for partial summary judgment and ORDERS Defendant to comply with an audit of its books and records from June 1, 2004 to the present time.

Defendant does request that if the Court determines that Plaintiff is entitled to an audit, the Court should limit the audit to the original four-year timeframe set forth in the CBA, from May of 2002 to May 1, 2006. ECF Dkt. #21 at 5. However, the Court has found that Defendant is contractually bound by the CBA from May of 2002 to the present time because it failed to comply with the evergreen clause's written termination requirement in order to end the CBA with Plaintiff. Accordingly, the Court denies Defendant's request and ORDERS Defendant to comply with an audit by Plaintiff of its books and records from June 1, 2004 to the present time.

### D. DEFENDANT MUST PAY THE COSTS OF THE AUDIT IF IT REVEALS DELINQUENT CONTRIBUTIONS OR OVERPAYMENTS

Finally, Plaintiff moves the Court to order Defendant to pay for the cost of an audit of its books and records in the event that the audit reveals that Defendant owes delinquent contributions. ECF Dkt. #19 at 9.

The Court GRANTS Plaintiff's request that Defendant pay for the cost of the audit if the audit reveals a "substantial deficiency" or that Defendant overpaid the Fund, as provided by Section 12 of the CBA to which Defendant is contractually bound.  Section 12 of the CBA states:

> If, as a result said audit or examination, substantial deficiency, as determined by the Board of Trustees, or more in payments to the Fund is discovered, the funds may assess their costs in performing the audit or examination to the Employer, and said cost shall be collectible as any other amount due from the Employer to the Funds.

ECF Dkt. #1, Exhibit A at 14.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for partial summary judgment and ORDERS that

1. Defendant is contractually bound by the CBA and the evergreen clause contained therein;

2. Plaintiff is entitled to enforce the provisions of the CBA to pursue an ERISA collection action;

3. Plaintiff is entitled to and Defendant must comply with an audit of Defendant's books and records dated June 1, 2004 to the present time; and

4. Defendant must pay the cost of the audit in the event that the audit reveals that Defendant has a "substantial deficiency" in its payments to the Fund or has paid more in payments to the Fund, as outlined in Section 12 of the CBA.

ECF Dkt. #19.

IT IS SO ORDERED.

Dated: January 31, 2008          */s/George J. Limbert*
                                        GEORGE J. LIMBERT
                                        U.S. MAGISTRATE JUDGE